## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CITIZENS BANK, N.A., <br><br> Plaintiff, <br><br> -against- <br><br> VALLEY NATIONAL BANK, <br><br> Defendant. | Civil Action No.: <br> **COMPLAINT** |

Plaintiff Citizens Bank, N.A. (hereinafter, "Citizens" or "Participant"), by its attorneys, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., as and for its Complaint against Valley National Bank ("Valley" or "Lender"), hereby alleges as follows:

## INTRODUCTION

1. This action arises out of Valley's clear and material breaches of the Participation Agreement between the parties, including Valley's: (1) failure to take reasonable steps to service and enforce a mortgage loan, including timely addressing the borrower's multiple defaults once known to Valley; (2) failure to provide required notice of the same defaults to Participant; and (3) baseless refusal to abide by its contractual obligation to repurchase Citizens' interest in the underlying loan.

2. The Participation Agreement between plaintiff Participant (Citizens) and defendant Lender (Valley) unambiguously states that if the borrower defaults on the underlying loan, or upon the occurrence of a default in the performance of any obligation of the borrower or guarantor, Lender must notify Participant in a timely manner – within five business days – of those circumstances in order to allow Participant and Lender to confer on next steps and, importantly, to

allow Participant to decide if it wants to continue its participation or remove itself from the arrangement.

3. That did not happen here. Valley was aware of ongoing borrower defaults, including, but not limited to, significant tax liabilities and a failure to maintain the required debt service coverage ratio. In clear breach of the Participation Agreement, Valley did not inform Participant of these and other borrower defaults. In fact, only when *Participant* raised the defaults it had uncovered as a result of its own investigation did Valley acknowledge the obvious events of default on the loan. Valley's inaction with respect to the borrower's defaults both before and after Participant had knowledge of the defaults constitutes a plain breach of its obligations to Participant under the Participation Agreement.

4. When Valley finally proposed to Participant how it would address certain borrower defaults, Participant properly exercised its contractual right to object to Valley's proposed actions, and ultimately to demand that Valley repurchase Participant's share of the loan. Despite multiple demands, Valley has failed to repurchase Participant's share of the loan and has failed to articulate any valid reason for its failure to do so.

5. It is apparent that Valley's bad faith conduct with respect to Citizens is actually its *modus operandi* with respect to a series of loans guaranteed by non-parties Avrohom (Shaya) Prager and Shulamit Prager (the "Guarantors"). Multiple litigations have been filed by banks who, like Citizens, agreed with Valley to participate in loans guaranteed by the Guarantors, with Valley as the lead lender. Like Citizens here, these other participant banks allege that Valley had unique knowledge of financial issues and loan defaults and simply failed to abide by its contractual obligations to share that knowledge with the participant banks. The breadth and depth of Valley's relationship with the Guarantors and their affiliates suggest that Valley's refusal to follow the basic

procedures with respect to obvious and repeated defaults may have been in bad faith, motivated by self-interest in protecting its own financial stake at the detriment to its participant partners, including Citizens.

6. In short, not only has Valley improperly sought to minimize its own risk associated with the loan it failed to properly administer by refusing to buy out Citizens under the terms the parties agreed to, but its extended and inexcusable inaction has allowed the mortgaged property to flounder, causing additional harm to Participant.

7. As a result of the harm caused by Valley's breaches, Participant seeks recovery of significant monetary damages in an amount to be determined at trial, but likely exceeding $24,000,000.

## THE PARTIES

8. Plaintiff Citizens Bank, N.A. is a bank headquartered and incorporated in Rhode Island. Citizens offers retail and commercial banking products and services to individuals, small businesses, middle-market companies, large corporations and institutions.

9. Defendant Valley is a regional bank incorporated under the laws of New Jersey, and headquartered in New Jersey.

## JURISDICTION AND VENUE

10. The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

11. This is an action between citizens of different states, in which Citizens is a citizen of Rhode Island and Valley is a citizen of New Jersey.

12. The amount in controversy exceeds $75,000, exclusive of interest and costs.

13. Venue in this judicial district is proper, pursuant to 28 U.S.C. § 1391(b)(1), because Valley is a resident of this judicial district.

14. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in this judicial district.

## STATEMENT OF THE RELEVANT FACTS

*Valley's Loan to the Non-Party Borrower*

15. On or about August 27, 2020, Valley made a mortgage loan in the amount of $65,000,000 (the "Loan") to non-party Wood Ave 194, LLC ("Borrower").

16. The Borrower is controlled by non-party Avrohom (Shaya) Prager. Avrohom (Shaya) Prager and Shulamit Prager are the Guarantors of the Loan.

17. Valley made the Loan pursuant to a promissory note dated August 27, 2020 (the "Note"), executed by Borrower and payable to Valley.

18. The Note is secured by a mortgage (the "Mortgage") on the real property located at 194 Wood Avenue South, Woodbridge Township, New Jersey 08830 (the "Property"), and security instruments, guarantees and other loan documents granting a security interest in favor of Lender. The Note, Mortgage, Limited Guaranty, and security instruments, together with certain other loan documents, are hereinafter collectively referred to as the "Loan Documents".

19. Upon information and belief, in or around the same time period, Valley also made several significant loans to affiliates of the Borrower and/or Guarantors.

*Citizens Becomes a Participant in the Loan and Negotiates a Repurchase Right*

20. On September 8, 2020, Investors Bank entered into a participation agreement with Valley (the "Participation Agreement").[1]

---

[1] In April of 2022, Investors Bank, a New Jersey state-chartered bank and wholly-owned subsidiary of Investors Bancorp Inc., merged with Citizens. Pursuant to the terms of the merger, the Participation Agreement was assigned to Citizens. Accordingly, Citizens, and not Investors Bank, is party to the Participation Agreement and the real party in interest in this action.

4

21. Pursuant to the Participation Agreement, Participant purchased from Valley an ownership interest in 46.15385% of the principal of Loan (the "Participant Share"), and the Participant funded $30,000,002.50 to Valley.

22. Pursuant to the Participation Agreement, Valley agreed to service, administer, and enforce the Loan according to a reasonable standard of care.

23. Given the inherent risks of the Loan, the parties agreed that Citizens would be notified in the event of any Borrower or Guarantor payment or performance defaults, including but not limited to Events of Default as defined by the Loan Documents. Such notice was required to be provided within five business days of Valley's knowledge of the default, without exception. The Participation Agreement further requires that Lender "shall" provide Participant with written notice of proposed actions to address the default(s).

24. To the extent that Participant did not agree with Lender's proposed actions, Participant could, within ten business days, file an objection setting forth the basis of its position. Within five business days, Lender could respond to Participant's objection by (i) stating that it agrees with Participant's objections and will move forward in a mutually agreeable manner, (ii) engaging in further discussion with Participant for a period not to exceed five business days, or (iii) stating that it does not agree with Participant's objections and will handle Borrower's defaults pursuant to Lender's proposed actions.

25. In the event that the parties did not agree on a proposed course of action related to the Borrower and/or Guarantor defaults, the parties agreed that Participant would have an automatic "out." The Participation Agreement expressly provides that Participant may exercise a repurchase right and demand that Lender repurchase the Participant's Share by sending a written notice to Lender (the "Repurchase Notice"). Upon receipt of a Repurchase Notice from Citizens

demanding repurchase of the Participant's Share, Valley **was required** to repurchase Citizens' Participant's Share within 10 business days.

26. The repurchase right is a critical and material feature of the Participation Agreement.

*Borrower Repeatedly Defaults Under the Loan Documents and Valley Fails to Timely Notify Citizens of the Defaults*

27. Beginning in December of 2023, Participant raised its concerns to Valley that, based on the information Valley and the Borrower had provided, the Borrower was not in compliance with the debt service coverage ratio ("DSCR") obligation set forth in Section 5.30 of the Mortgage. In fact, the information provided by the Borrower made clear that the Borrower was not currently (and could not prospectively) comply with the requirement due to loss of tenants and/or reletting to tenants with extensive free-rent periods. Upon information and belief, Valley was not adequately addressing these significant leasing concerns and was allowing the Borrower to proceed unchecked and in violation of the Loan Documents.

28. It is noteworthy that Participant raised this significant default to Valley, not the other way around (as is typical and required by the Agreement). In response to Participant's inquiries, Valley admitted that it was communicating with the Borrower regarding its failure to satisfy the covenant, but no further information was provided. On March 18, 2024, Participant again raised its DSCR concerns to Valley, seeking additional information regarding whether the Borrower was in default of the covenant. No further information was provided. On or about April 5, 2024, Participant inquired again as to when the Borrower's DSCR default began, but again no substantive response was provided by Valley.

29. Upon information and belief, Borrower has been in default of its DSCR covenant in excess of 6 months. The default of the DSCR covenant constitutes an Event of Default as

6

defined under Sections 5.30 and 8.3 of the Mortgage. Pursuant to the Participation Agreement, Valley had five business days to notify Citizens of the default of the DSCR covenant. However, Valley did not provide timely notice despite a clear obligation to do so.

30. In or around February of 2024, Participant learned that Borrower negotiated a termination of the Lease Agreement without Valley's prior consent, in violation of Section 5.17 of the Mortgage and had improperly retained the lease termination fee. These actions also constitute an Event of Default as defined under the Mortgage. Again, it was Participant who was forced to raise and inquire about this default despite the fact that Valley had knowledge. Valley once again did not provide timely notice.

31. In or around March of 2024, Participant learned that Borrower had not paid real estate taxes on the Mortgaged Property for nearly two years as required by Sections 5.2, 5.16, 8.7, and 8.8 of the Mortgage. Borrower's failure to timely pay real estate taxes constitutes an Event of Default as defined under the Mortgage documents. Participant again had to investigate and proactively raise its concern about this default with Valley – who was supposed to be enforcing the terms of the Loan Documents. In its written response to Participant's ongoing inquiries, Valley admitted that it was aware of this default and yet the required notice was not timely provided to Participant.

32. Upon information and belief, Valley had knowledge of other Borrower defaults and failed to provide Participant with timely notice as required by the Participation Agreement. Based on these easily ascertainable and obvious defaults of Borrower, it is clear that Valley was not servicing, administering, or enforcing the terms of the Loan Documents in a reasonable manner or exercising an adequate standard of care. Unsurprisingly, the value of the subject property (as

determined by an independent third-party) has significantly declined since the initial funding of the Loan.

33. In addition to its failures to provide notice to Citizens, upon information and belief, Valley also did not send out timely or adequate notice of any defaults to the Borrower or Guarantor as would be commercially reasonable.

34. Upon information and belief, Valley's failure to provide proper notice of loan defaults with respect to the series of loans guaranteed by the Guarantors was not only typical, but also motivated by Valley's self-interest. Upon information and belief, Valley did not serve notices of default or inform the relevant participant banks of material defaults related to the series of loans guaranteed by the Guarantor despite Valley's knowledge of the same. Upon information and belief, Valley's ongoing reluctance to place the Borrower in default was due to its broader financial relationship with the Guarantors, and may have been motivated Valley's desire to, *inter alia*, avoid cross-defaulting the other loans with the affiliates of the Borrower and Guarantors which would negatively impact Valley.

35. In fact, it was only *after* Participant exercised its repurchase right (as discussed below) that Valley provided the required notice to Borrower of material defaults under the Loan Documents by letter dated May 20, 2024 (the "Default Notice"). Many, if not all, of the defaults set forth in the Default Notice should have been addressed by Valley long before. The defaults identified in the Default Notice include numerous payment and reporting violations, as well as the breach of other obligations including, but not limited to, those discussed above.

36. To be clear, Participant did not receive the required notice regarding any of these defaults, timely or otherwise. Indeed, for at least some of the Borrower defaults set forth in the Default Notice, the Default Notice was the *first* time Participant was informed of the defaults.

Valley almost certainly had knowledge of each of these defaults for more than five business days, and likely more than a few weeks or months.

37. Based on the foregoing, Valley breached the Participation Agreement with Citizens, causing substantial harm to Citizens and warranting judicial relief.

***Valley Improperly Refuses to Repurchase Citizens' Participant's Share***

38. Valley's knowledge of the aforementioned Borrower defaults triggered Valley's obligation to provide Citizens with written notice of proposed actions to be taken with respect to the Events of Default. By writing dated April 4, 2024, Valley sent to Citizens the actions that Valley proposed to take with respect to the aforementioned defaults. Valley supplemented the notice on April 9, 2024 with additional proposed actions.

39. By letter dated April 17, 2024, in accordance with the terms of the Participation Agreement, Citizens submitted to Valley its written objection to the actions proposed by Valley with respect to certain of Borrower's defaults (the "Objection Notice").

40. Valley did not respond to the Objection Notice.

41. Pursuant to the Participation Agreement, Citizens was entitled to exercise its repurchase right if it did not receive a timely response to the Objection Notice. By letter dated May 6, 2024, Citizens demanded that Valley repurchase the Participant's Share (the "Repurchase Notice"). Pursuant to the Participation Agreement, Valley had 10 days from the date of the demand to repurchase the Participant's Share.

42. By letter dated May 8, 2024, Valley declined, without explanation, Citizens' demand to repurchase the Participant's Share as required by the Participation Agreement.

43. By letter to Valley dated June 3, 2024, Citizens reiterated its demand that Valley repurchase the Participant's Share pursuant to the Participation Agreement. Valley failed to respond to the June 3, 2024 demand letter.

44. By letter dated July 23, 2024, Citizens again reiterated its demand that Valley repurchase the Participant's Share pursuant to the Participation Agreement. Valley again failed to respond to the July 23, 2024 demand letter.

45. By letter dated July 26, 2024, Valley informed Citizens that Valley concluded that the Borrower could not meet its obligations under the Loan Documents and proposed to commence an action for foreclosure of the Mortgaged Property. Valley did not address Citizens' May 2024 demand that Valley repurchase the Participant's Share under Section 9(c) of the Participation Agreement.

46. By letter to Valley dated August 8, 2024, Citizens objected to Valley's proposed action of commencing an action of foreclosure on the Mortgaged Property. Citizens again reiterated its demand that Valley repurchase the Participant's Share pursuant to Section 9(c) of the Participation Agreement. Valley did not respond.

47. To date, Valley has not repurchased the Participant's Share in violation of the Participation Agreement, causing substantial damages to Citizens and warranting judicial relief.

## FIRST CLAIM

### (Breach of Contract)

48. Plaintiff Citizens repeats and realleges the allegations set forth in paragraphs 1 through 47 above.

49. The Participation Agreement is a valid and enforceable contract.

50. At all relevant time periods, Citizens performed its obligations under the Participation Agreement.

51. Valley has breached its contractual obligations, including, but not limited to failing (1) to adequately or properly administer, service, and enforce the Loan Documents pursuant to and as required by Section 8 of the Participation Agreement; and (2) failing to provide the requisite

notices of Borrower's defaults under the Loan Documents to Citizens pursuant to and as required by Section 9 of the Participation Agreement.

52. Valley has acted in bad faith and with unclean hands with respect to its contractual obligations to Citizens.

53. Citizens has suffered significant damages due to Valley's conduct.

54. As a direct, proximate, and foreseeable result of Valley's breaches, Citizens has suffered contractual damages to be determined at trial, plus interest, costs, and any other relief available at law.

## SECOND CLAIM

### (Breach of Contract – Failure to Repurchase Participant's Share)

55. Plaintiff Citizens repeats and realleges the allegations set forth in paragraphs 1 through 54 above.

56. The Participation Agreement is a valid and enforceable contract.

57. At all relevant time periods, Citizens performed its obligations under the Participation Agreement.

58. Valley has breached the Participation Agreement by failing to comply with its obligations thereunder to repurchase Citizens' Participant's Share in the Loan.

59. Citizens has suffered significant damages due to Valley's conduct.

60. Valley has acted in bad faith and with unclean hands with respect to its contractual obligations to Citizens.

61. As a direct, proximate, and foreseeable result of Valley's breaches, Citizens has suffered contractual damages to be determined at trial, but believed to exceed $24,000,000, plus interest, costs, and any other relief available at law.

## THIRD CLAIM

### (Declaratory Judgment)

62. Plaintiff Citizens repeats and realleges the allegations set forth in paragraphs 1 through 61 above.

63. A dispute exists between Citizens and Valley regarding Valley's refusal to comply with its obligations to repurchase Citizens' Participant Share of the Loan.

64. Accordingly, Citizens is entitled to a judgment declaring that the Participation Agreement is valid and enforceable, that Citizens has validly exercised its rights to demand a repurchase of the Participant's Share, and that Valley breached its obligations under the Participation Agreement by refusing to repurchase Citizens' Participant's Share.

## FOURTH CLAIM

### (In the Alternative - Breach of the Implied Covenant of Good Faith and Fair Dealing)

65. Plaintiff Citizens' repeats and realleges the allegations set forth in paragraphs 1 through 64 above.

66. The Participation Agreement contains an implied covenant of good faith and fair dealing that obligates Valley to perform the terms and conditions of the contract fairly and in good faith, and to refrain from doing any act that would prevent or impede Citizens from performing any or all of the conditions of the contract, or any act that would deprive Citizens of the benefits of the contract.

67. Valley has intentionally, without cause, and in bad faith, failed to perform its obligations pursuant to the Participation Agreement in a manner that harms Citizens. Valley has intentionally, without cause, and in bad faith, failed to provide the agreed-upon notice of serious defaults in an effort to avoid the Participant's right to trigger its repurchase rights. Valley has intentionally, without cause, and in bad faith, failed to disclose relevant and material information

12

to Citizens with respect to the Loan, Borrower, and Guarantors, and sought to protect its financial position to the detriment of Citizens.

68. Moreover, Valley has acted in bad faith to deprive Citizens of the benefit of its repurchase right under the Participation Agreement. Valley has no basis by which to refuse to abide by its clear and unambiguous contractual obligations and does so only to limit its own losses or increase its leverage in litigation.

69. Valley has acted in bad faith and with unclean hands with respect to its contractual obligations to Citizens.

70. To the extent Valley refuses to comply with the Participation Agreement, Valley has violated the implied covenant of good faith and fair dealing.

71. As a direct, proximate, and foreseeable result of Valley's breach, Citizens has suffered damages to be determined at trial, but believed to exceed $24,000,000, plus interest, costs, and any other relief available at law.

WHEREFORE, Plaintiff Citizens respectfully requests judgment as follows:

a. On the First Claim, awarding Plaintiff damages in an amount to be determined at trial, but in excess of $24,000,000, plus pre- and post-judgment interest, costs, and any other relief available at law.

b. On the Second Claim, awarding Plaintiff damages in an amount to be determined at trial, but in excess of $24,000,000, plus pre- and post-judgment interest, costs, and any other relief available at law.

c. On the Third Claim, declaring that the Participation Agreement is valid and enforceable, that Citizens has validly exercised its rights to demand a repurchase of the

13

Participant's Share, and that Valley breached its obligations under the Participation Agreement by refusing to repurchase Citizens' Participant's Share.

  d. On the Fourth Claim, awarding Plaintiff damages in an amount to be determined at trial, but in excess of $24,000,000, plus pre- and post-judgment interest, costs, and any other relief available at law.

  e. Granting all other relief as to which Plaintiff may be justly entitled.

Dated: New York, New York
   April 3, 2025

            By: *s/ Kaitlyn A. Crowe*

            MINTZ LEVIN COHN FERRIS
             GLOVSKY AND POPEO, P.C.

            Kaitlyn A. Crowe
            LisaMarie Collins (*pro hac vice admission pending*)
            919 Third Avenue
            New York, NY 10022
            212-692-6715
            kacrowe@mintz.com
            lcollins@mintz.com